IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02132-CMA-KLM

ANN MARIE MILLER,

    Plaintiff,

v.

JENNIFER ANN KELLY,

    Defendant.
_____

**RECOMMENDATION TO TRANSFER CASE AND
ORDER DENYING PLAINTIFF'S SECOND MOTION TO SET ASIDE STIPULATION
TO TRANSFER CASE TO VIRGINIA AS MOOT**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Combined Motion to Dismiss or Transfer and Brief in Support of Motion to Dismiss or Transfer** [Docket No. 10; Filed September 28, 2010] (the "Motion to Dismiss"). On October 18, 2010, Plaintiff, who is proceeding *pro se*, filed a Response [Docket No. 15] opposing the Motion to Dismiss.[1] Defendant did not file a reply. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C., the Motion to Dismiss has been referred to this Court for a recommendation regarding disposition. The Court has reviewed the Motion to Dismiss [#10], Plaintiff's Response [#15], the entire case file, and the applicable law and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion to Dismiss be **GRANTED in part** and that this case be **TRANSFERRED** to the

---

[1] Plaintiff incorrectly styled her response to Defendant's Motion to Dismiss as a "Reply." Herein, Plaintiff's "Reply" [#15] will be referred to as "Response."

United States District Court for the Western District of Virginia.

## I. Summary of the Case

On September 1, 2010, Plaintiff filed a Complaint [Docket No. 1] alleging that she suffered harm as a result of "libelous" and "defamatory" statements that Defendant wrote in a LiveJournal blog entry on May 17, 2010.[2] *Complaint* [#1] at 3. The blog entry was titled "'Setting the record straight–If anything happens it was Ann Marie Miller.'" *Id.* at 4, ¶ 12(a). The entry described Plaintiff as "an intimacy stalker" and detailed Plaintiff's purported "stalking" behavior directed at Defendant and Defendant's husband. *Id.* at 15. Plaintiff alleges that the content of the blog entry "has harmed [her] reputation" in Colorado. *Id.* at 4, ¶¶ 12(c) and 14.

On September 28, 2010, Defendant responded to the Complaint with the instant Motion to Dismiss. On October 1, 2010, Plaintiff and Defendant jointly filed a Stipulation for Transfer of Action [Docket No. 12] in which they requested "that this Court order that [t]his action be transferred to the United States District Court for the Western District of Virginia." *Stipulation for Transfer of Action* [#12] at 1. On October 18, 2010, Plaintiff filed a Motion to Set Aside Agreement to Transfer Case to Virginia [Docket No. 13] in which she stated that she does not want this case transferred and that she had signed the Stipulation for Transfer of Action [#12] "under duress." On the same day, Plaintiff also filed her Response [#15] in opposition to the Motion to Dismiss.

On October 19, 2010, the Court denied without prejudice Plaintiff's Motion to Set Aside Agreement to Transfer Case to Virginia [#13] because Plaintiff failed to confer with

---

[2] LiveJournal is a blog hosting website. Defendant represents that LiveJournal describes itself as "'an online community, a social network, and a place for self-expression.'" *Motion to Dismiss* [#10] at 5.

Defendant prior to filing the motion, in violation of D.C.COLO.LCivR 7.1A. [Docket No. 19]. On October 22, 2010, Plaintiff filed a Second Motion to Set Aside Agreement to Transfer Case to Virginia [Docket No. 20]. That motion is currently pending before the Court.

The Motion to Dismiss seeks dismissal of Plaintiff's Complaint for lack of personal jurisdiction and improper venue, or, in the alternative, transfer of this case to the United States District Court for the Western District of Virginia pursuant to 28 U.S.C. § 1406. Defendant asserts that the Court does not have personal jurisdiction over her because she "is not and has never been a resident of Colorado, [she] has no connections to [Colorado], and her one-time posting of a LiveJournal message on the internet . . . does not constitute the 'minimum contacts' with the State of Colorado required to support personal jurisdiction[.]" *Motion to Dismiss* [#10] at 1. Defendant also asserts that this Court is an improper venue for Plaintiff's action because (1) Defendant does not reside in Colorado, (2) the events giving rise to Plaintiff's claim occurred solely in Virginia, and (3) Defendant is not subject to this Court's personal jurisdiction and "the Western District of Virginia would have personal jurisdiction over [Defendant]" if Plaintiff were to bring this action there. *Motion to Dismiss* [#10] at 12.

In response, Plaintiff contends that dismissal or transfer of this case is unwarranted. Plaintiff asserts that Defendant is subject to this Court's personal jurisdiction because she (Defendant) committed "a tort within the State of Colorado." *Response* [#15] at 4. Plaintiff has not specifically addressed the propriety of this Court as a venue for this action.

## II. Standard of Review

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and (3) is to test whether the Court has personal jurisdiction over the named parties and whether the

Court is a proper venue for the action. After a motion to dismiss has been filed, the plaintiff bears the burden of establishing personal jurisdiction over the defendants. *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984). The Court will accept the well-pled allegations (namely the plausible, nonconclusory, and nonspeculative facts) of the operative pleading as true to determine whether the plaintiff has made a *prima facie* showing that the defendants are subject to the Court's personal jurisdiction. *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). The Court "may also consider affidavits and other written materials submitted by the parties." *Impact Prods., Inc. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186, 1189 (D. Colo. 2004). Any factual disputes are resolved in the plaintiff's favor. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074-75 (10th Cir. 2004).

Finally, the Court must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 594, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III. Analysis

#### A. Personal Jurisdiction

Because the defense of lack of personal jurisdiction has been raised, Plaintiff bears the burden of proof. *Benton*, 375 F.3d at 1074. Plaintiff must make a *prima facie* showing that the Court's exercise of personal jurisdiction over Defendant is proper. *Impact Prods.*, 341 F. Supp. 2d at 1189.

It is uncontested in this case that Defendant is neither a citizen nor a resident of Colorado. *Complaint* [#1] at 1, ¶ 2 ("Defendant Jennifer Ann Kelley is a citizen of Virginia[.]"); *Motion to Dismiss* [#10] at 1 ("[Defendant] is not and never has been a resident of Colorado[.]"). Accordingly, Plaintiff has invoked the Court's diversity subject matter jurisdiction under 28 U.S.C. § 1332. *Complaint* [#1] at 1, ¶ 3. In a diversity action, the Court may only exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of Colorado permits the exercise of personal jurisdiction over the defendant, and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Dudnikov*, 514 F.3d at 1070; *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995) ("To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state[.]"). "The Supreme Court of Colorado has interpreted Colorado's long-arm statute to extend jurisdiction to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment." *Impact Prods.*, 341 F. Supp. 2d at 1189 (citing *Keefe v. Kirschenbaum & Kirschenbaum*, 40 P.3d 1267, 1270 (Colo. 2002)). Accordingly, the Court need only consider whether the exercise of personal jurisdiction over Defendant is permitted by the Due Process Clause. *SCC*

*Commc'ns Corp. v. Anderson*, 195 F. Supp. 2d 1257, 1260 (D. Colo. 2002) ("[The] analysis turns on a single inquiry, whether the exercise of personal jurisdiction over [the defendant] comports with due process."); *Dudnikov*, 514 F.3d at 1070 ("[T]he first, statutory, inquiry effectively collapses into the second, constitutional, analysis.").

The Due Process Clause permits the exercise of personal jurisdiction when two conditions are met. First, a defendant must have "minimum contacts" with the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). This Court has explained minimum contacts as follows:

> The requisite minimum contacts exist if the non-resident defendant has continuous and systematic contacts with the forum state (general jurisdiction) or if the defendant (I) has purposefully directed activities at forum residents or otherwise acted to avail itself purposefully of the privilege of conducting activities there and (ii) the litigation results from alleged injuries that arise out of or relate to those activities (specific jurisdiction).

*Impact Prods.*, 341 F. Supp. 2d at 1190. In short, a defendant must have purposely established minimum contacts with the forum state such that he "should reasonably anticipate being haled into court" there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (internal quotation omitted).

Second, if sufficient minimum contacts are shown, "the Due Process Clause requires that [the Court] further consider whether the exercise of personal jurisdiction over [the] defendant would nonetheless offend traditional notions of fair play and substantial justice." *Impact Prods.*, 341 F. Supp. 2d at 1190.

### 1. Minimum Contacts

#### (i) General Personal Jurisdiction

Plaintiff has not argued that Defendant has continuous and systematic contacts with Colorado sufficient to permit the Court to exercise general personal jurisdiction over her. However, Plaintiff has suggested that Defendant is subject to the Court's general personal jurisdiction because she (Defendant) authored a blog entry. *See Complaint* [#1] at 2, ¶ 4 ("[I]nternet postings can subject the Defendant to personal jurisdiction in Colorado[.]").

The Court of Appeals for the Tenth Circuit has recognized that general personal jurisdiction may sometimes be exercised over a defendant due to his authorship of a website. *See Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1296 (10th Cir. 1999) (quoting *Patriot Systems, Inc. v. C-Cubed Corp.*, 21 F. Supp. 2d 1318, 1323-24 (D. Utah 1998)). A special framework has been developed for determining whether a website subjects its author to the general personal jurisdiction of a particular forum. *Id.* This framework classifies websites into three general categories: (1) business websites, i.e., those through which the site's author "clearly conducts business over the Internet between different fora," *SCC Commc'ns*, 195 F. Supp. 2d at 1260; (2) passive websites; and (3) interactive websites. *Soma Med. Int'l*, 196 F.3d at 1296. A website falls within the first category if its author uses it to "'enter[] into contracts with residents of foreign jurisdictions that involve the knowing and repeated transmission of computer files over the Internet.'" *Id.* (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (internal quotations omitted)). A passive website "is one where the [site's author] has merely posted information [that is] accessible to a user in a different forum." *SCC Commc'ns*, 195 F. Supp. 2d at 1260. An interactive website is one "'where a user can

exchange information with the host computer.'" *Soma Med. Int'l*, 196 F.3d at 1296 (quoting *Zippo*, 952 F. Supp. at 1124).

It is well-settled that general personal jurisdiction may be exercised over the author of a business website. *SharpShooter Spectrum Venture, LLC v. Consentino*, No. 09-cv-00150-WDM-KLM, 2009 WL 4884281, at *5 (D. Colo. Dec. 10, 2009) (unpublished decision) ("Personal jurisdiction is certainly established when a defendant clearly does business over the Internet, such as entering into contracts which require the knowing and repeated transmission of computer files over the Internet." (internal quotations and citations omitted)). It is also settled that a defendant's authorship of a passive website does not, by itself, subject him to a forum's general personal jurisdiction. *Id.*; *accord Zippo*, 952 F. Supp. at 1124 ("A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction." (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996))).

Whether the exercise of general personal jurisdiction over the author of an interactive website is appropriate "depends upon the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *SharpShooter*, 2009 WL 4884281, at *5 (quotations omitted). As a website increases in interactivity and commercial nature it becomes more reasonable for a court to find that the site's author "should have foreseen being haled into the [court]'s jurisdiction." *SCC Commc'ns*, 195 F. Supp. 2d at 1261.

In this case, Plaintiff alleges that "LiveJournal is an interactive website." *Complaint* [#1] at 2, ¶ 5. But Plaintiff has provided nothing to support this allegation. Plaintiff has simply presented a document containing the purported text of Defendant's May 17, 2010

LiveJournal blog entry. *Complaint* [#1] at 14-15. This document contains only text and it does not provide any information about LiveJournal, Defendant's LiveJournal blog, or the level of interactivity or commercial nature of either LiveJournal or Defendant's LiveJournal blog. *Id.* While the Court accepts Plaintiff's well-pled allegations as true for the purpose of establishing personal jurisdiction over Defendant, *Dudnikov*, 514 F.3d at 1070, it accords no deference to Plaintiff's conclusory and wholly unsupported allegations. *See Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1939 (2009) ("A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth."); *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (noting that a court can disregard conclusory allegations in determining whether exercising personal jurisdiction is proper). Moreover, Plaintiff's allegation that Defendant's LiveJournal blog was an interactive website is contradicted by Defendant's representations in her Motion to Dismiss. Defendant avers that she "[did] not engage in any commercial activity[,] such as selling goods or services[,] through her LiveJournal postings, nor [did] she request interactive responses to her posts." *Motion to Dismiss* [#10] at 5. Defendant further avers that she used her LiveJournal blog "to post her thoughts, as she would in a bound paper journal." *Id.*

Defendant's LiveJournal blog appears to the Court to have been merely a passive website that allowed internet users to access and view information posted by Defendant. Accordingly, the Court finds that Defendant's authorship of a LiveJournal blog is an insufficient basis for the exercise of general personal jurisdiction over her.

### (ii)     Specific Personal Jurisdiction

Plaintiff asserts that Defendant is subject to this Court's specific personal jurisdiction

because she (Defendant) "has unceasingly attacked [Plaintiff] by making defamatory statements which [were] published on the internet" and were accessible by internet users in Colorado. *Complaint* [#1] at 3, ¶ 10; *see id.* at 2, ¶ 4 ("[I]nternet postings can subject the Defendant to personal jurisdiction in Colorado[.]"). Specifically, Plaintiff alleges that Defendant published an entry on "LiveJournal, an interactive blog, on May 17, 2010," that was titled "'Setting the record straight–If anything happens it was Ann Marie Miller.'" *Id.* at 4, ¶ 12(a). Plaintiff further alleges that the content of the blog entry "has harmed [her] reputation" in Colorado. *Id.* at 4, ¶¶ 12(c) and 14.

As stated *supra* in Part III.A of this Recommendation, a nonresident defendant is subject to this Court's specific personal jurisdiction only when she "has purposefully directed activities at [Colorado] residents or otherwise acted to avail [her]self purposefully of the privilege of conducting activities [in Colorado]." *Impact Prods.*, 341 F. Supp. 2d at 1190. The aim of the "'purposeful direction' doctrine has been said by the Supreme Court to [be to] ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King*, 471 U.S. at 475). A defendant has "purposefully directed" her activities at Colorado or its residents when she has (1) taken intentional action, (2) that was expressly aimed at Colorado, (3) with the knowledge that the brunt of the injury from the action would be felt in Colorado. *Id.* at 1072; *see also Impact Prods.*, 341 F. Supp. 2d at 1190.

With regard to the first element of purposeful direction, the Court of Appeals for the Tenth Circuit has not determined "whether a defendant's intentional [action] must be wrongful or tortious or whether innocent intentional action suffices." *SharpShooter*, 2009

WL 4884281, at *6; see Dudnikov, 514 F.3d at 1073 (stating that a court can "avoid entering this thicket" when the complaint alleges wrongful intentional conduct). The Court need not decide the issue because Plaintiff has alleged that Defendant's act of authoring the blog entry was tortious (i.e., "libelous" and "defamatory"), and this adequately pled allegation must be accepted as true at this juncture. See Dudnikov, 514 F.3d at 1070. Accordingly, Plaintiff's Complaint has adequately established that Defendant took intentional action. The Court therefore moves on to consider whether Defendant's act of authoring the blog entry was expressly aimed at Colorado.

The "express aiming" test focuses on a defendant's intentions by asking "where was the 'focal point'" of her intentional action. Id. at 1075. The Court of Appeals for the Tenth Circuit has adopted a restrictive approach to the "express aiming" test, holding that the forum state itself–and not merely a known resident of the forum state–must be the focal point of the defendant's intentional action. Id. at 1075 n.9. Although "[t]he question of whether an Internet Web site is expressly aimed at any certain location is a complicated one," SharpShooter, 2009 WL 4884281, at *6, this Court has previously held that "[t]he creation of a passive web site, by itself, is not considered an act purposefully directed toward" any particular state. SCC Commc'ns, 195 F. Supp. 2d at 1260 (citing Soma Med. Int'l, 196 F.3d at 1296). Further, the fact that a passive website was accessed by a user in a certain state is insufficient to subject the site's author to the jurisdiction of courts situated in that state. Id.

In this case, the Court has found that Defendant's LiveJournal blog was a passive website. Thus, under the rule of SCC Communications, the Defendant's authorship of an entry on the blog was not an act purposefully directed at Colorado. Although the blog entry

WL 4884281, at *6; see Dudnikov, 514 F.3d at 1073 (stating that a court can "avoid entering this thicket" when the complaint alleges wrongful intentional conduct). The Court need not decide the issue because Plaintiff has alleged that Defendant's act of authoring the blog entry was tortious (i.e., "libelous" and "defamatory"), and this adequately pled allegation must be accepted as true at this juncture. See Dudnikov, 514 F.3d at 1070. Accordingly, Plaintiff's Complaint has adequately established that Defendant took intentional action. The Court therefore moves on to consider whether Defendant's act of authoring the blog entry was expressly aimed at Colorado.

The "express aiming" test focuses on a defendant's intentions by asking "where was the 'focal point'" of her intentional action. Id. at 1075. The Court of Appeals for the Tenth Circuit has adopted a restrictive approach to the "express aiming" test, holding that the forum state itself–and not merely a known resident of the forum state–must be the focal point of the defendant's intentional action. Id. at 1075 n.9. Although "[t]he question of whether an Internet Web site is expressly aimed at any certain location is a complicated one," SharpShooter, 2009 WL 4884281, at *6, this Court has previously held that "[t]he creation of a passive web site, by itself, is not considered an act purposefully directed toward" any particular state. SCC Commc'ns, 195 F. Supp. 2d at 1260 (citing Soma Med. Int'l, 196 F.3d at 1296). Further, the fact that a passive website was accessed by a user in a certain state is insufficient to subject the site's author to the jurisdiction of courts situated in that state. Id.

In this case, the Court has found that Defendant's LiveJournal blog was a passive website. Thus, under the rule of SCC Communications, the Defendant's authorship of an entry on the blog was not an act purposefully directed at Colorado. Although the blog entry

was allegedly accessed by Plaintiff in Colorado, no allegation or evidence has been presented to indicate that Defendant expressly aimed the entry at Colorado. The entry mentioned Colorado just once, stating that "[Plaintiff] is currently residing in Denver, CO." *Complaint* [#1] at 15. Further, as Defendant points out, the entry "did not request that readers harass [Plaintiff], ask readers to spread the word throughout Colorado of her mental instability, or urge Colorado employers not to hire her." *Motion to Dismiss* [#10] at 11. Moreover, Defendant represents that she did not intend her May 17, 2010 blog entry to be accessible by Plaintiff or anyone in Colorado:

> [Defendant] intended that [the blog entry] be viewed only by the approximately six (6) 'friends' who had LiveJournal accounts networked to hers, [and] who received notifications of her new postings and had authority to access her account. [Defendant] was unaware that the [blog entry], which she intended to be semi-private, could be located through a detailed Google search. She certainly did not intend that her [blog entry] be read in the State of Colorado, where none of her 'friends' live.

*Id.* at 4-5.

Finally, even if the Court sets Defendant's representations aside and assumes that Defendant knew that the May 17, 2010 blog entry might have a negative effect on Plaintiff in Colorado, that fact "is not sufficient to demonstrate 'express aiming' at this forum." *Impact Prods.*, 341 F. Supp. 2d at 1191. The Court concludes that Plaintiff has failed to establish that Defendant's blog entry was purposefully aimed at Colorado.

Even though Defendant's act of authoring the May 17, 2010 blog entry was not purposefully directed at Colorado, Plaintiff's Response [#15] can be read to suggest that Defendant's failure to remove the entry after being asked to do so was a separate act that was purposefully directed at Colorado. Plaintiff states as follows:

> I sent [Defendant] a short email letting her know that if she removed the

> statement in question, I would not sue her. . . . It was a three sentence long, professional email that I cannot locate in my sent email (I sent it awhile ago and can't recall what email [account] it was sent from). [Defendant] failed to do so. Therefore, [Defendant] had notice that [the blog entry] was impacting me here [and] was accessed by residents of Colorado and other states, and she chose to continue with her behavior, knowing the impact it was having on me in Colorado, until the attorney she hired clearly advised her that removal might help her case.

*Response* [#15] at 1-2.

This Court has recently rejected a similar argument. In *SharpShooter*, the defendant authored a passive website that allegedly infringed upon the plaintiff's ownership of trademarks for the name "SharpShooter." 2009 WL 4884281, at *2. The plaintiff "presented evidence that it notified defendant of his alleged infringing activity and [the defendant] did not remove [his] Web site from the Internet." *Id.* at *7. The Court held that the defendant's failure to remove his website was not a separate act purposefully directed at Colorado, explaining as follows: "[The defendant]'s conduct after being notified in this case was of a passive nature, merely leaving his Web site up and running, but not actively directing any contact with Colorado or availing himself of any services in Colorado." *Id.*

Following the rule of *SharpShooter*, the Court finds that Defendant's failure to remove her LiveJournal blog entry after being asked to do so was not a separate act purposefully directed at Colorado. The Court concludes that Plaintiff has not established that Defendant purposefully directed any activity at issue in this case at Colorado. Accordingly, Defendant is not subject to this Court's specific personal jurisdiction.

### 2. Fair Play and Substantial Justice

Having found that Plaintiff has not carried her burden of establishing that Defendant has sufficient minimum contacts with Colorado, the Court need not further consider

traditional notions of fair play and substantial justice.

### B. Transfer or Dismissal Without Prejudice

As the Court has found that due process principles prohibit the exercise of personal jurisdiction over Defendant, the next step is consideration of whether to transfer the case prior to dismissal pursuant to 28 U.S.C. § 1631. *Trujillo v. Williams*, 465 F.3d 1210, 1222-23 (10th Cir. 2006); *Arocho v. Nafziger*, 367 F. App'x 942, 951 n.10 (10th Cir. 2010) (Dismissal of an action for lack of personal jurisdiction "without an evaluation of whether justice warranted, rather, a transfer under 28 U.S.C. § 1631 would require a remand for consideration of that alternative."). Section 1631 directs that when a court "finds that there is want of jurisdiction, the court shall, if it is in the interest of justice, transfer [the] action" to any other court in which the action could have been brought at the time it was filed or noticed. The Court of Appeals for the Tenth Circuit has interpreted Section 1631 to grant district courts "discretion in making a decision to transfer an action or instead to dismiss the action without prejudice." *Trujillo*, 465 F.3d at 1222-23 (citing *United States v. Botefuhr*, 309 F.3d 1263, 1274 n.8 (10th Cir. 2002)). When deciding whether to transfer or dismiss an action, the Court should consider the following factors: (1) whether a new action brought by the plaintiff in a proper forum would be time barred; (2) whether the plaintiff's claims are likely to have merit; and (3) whether "the original action was filed in good faith rather than filed after [the] plaintiff either realized or should have realized that the forum in which he or she filed was improper." *Id.* at 1223 n.16 (citations omitted).

With regard to the first factor, it does not appear that Plaintiff's claim of libel would be time barred if she desired to file a new action in a proper forum after this action is dismissed. The conduct giving rise to Plaintiff's alleged injury occurred in Virginia on May

17, 2010.  Under Virginia law, the statute of limitations for libel and defamation claims is one year.  Va. Code Ann. § 8.01-247.1 (2000).  Under Colorado law, the statute of limitations for libel and defamation claims is also one year.  Colo. Rev. Stat. § 13-80-103(1)(a); *Conrad v. The Educ. Res. Inst.*, 652 F. Supp. 2d 1172, 1186 (D. Colo. 2009) ("A one-year statute of limitation applies to [p]laintiff's defamation/libel claim.").  Accordingly, Plaintiff's ability to file a timely new action in a proper forum weighs in favor of dismissal.

With regard to the second factor, the Court finds that Plaintiff's claim may be found to have merit if this case is transferred.  Plaintiff has raised a claim of libel.  *Complaint* [#1] at 3, ¶ 12.  If this case is transferred, the United States District Court for the Western District of Virginia will apply Virginia's choice of law rules to determine whether the substantive law of Colorado or Virginia governs adjudication of the merits of the libel claim.  *See Teletronics, Inc. v. United Nat'l Ins. Co.*, 796 F. Supp. 1382, 1389 (D. Colo. 1992) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)) (a federal court exercising its diversity jurisdiction must apply the choice of law rules of the forum state).  Under Virginia's choice of law rules, the court would likely apply Virginia law when adjudicating the merits of the claim.  *See McMillan v. McMillan*, 253 S.E.2d 662, 663 (Va. 1979) ("[T]he settled rule in Virginia is that the substantive rights of the parties in a multistate tort action are governed by the law of the place of the wrong."); *PBM Products, LLC v. Mead Johnson Nutrition Co.*, 678 F. Supp. 2d 390, 398 (E.D. Va. 2009) ("Virginia applies the *lex loci delicti* rule, that is, the law of the place of the wrong, to defamation actions."); *Galustian v. Peter*, 561 F. Supp. 2d 559, 565 (E.D. Va. 2008) (citing *Lapkoff v. Wilks*, 969 F.2d 78, 81 (4th Cir. 1992)) ("For purposes of a defamation claim, the 'place' of

the wrong is the place of publication.").[3]

Under Virginia law, "the elements of libel are (1) publication of (2) an actionable statement with (3) the requisite intent." *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005) (citing *The Gazette, Inc. v. Harris*, 325 S.E.2d 713, 720 (Va. 1985)). A statement is actionable only if it is both false and defamatory. *Id.* (citing *M. Rosenberg & Sons v. Craft*, 29 S.E.2d 375, 378 (Va. 1944)). Statements of opinion are generally not actionable because such statements cannot be objectively characterized as true or false. *Id.* (citation omitted). Whether a statement is an actionable statement of fact or a nonactionable opinion is a matter of law to be determined by a court. *Id.* (citation omitted).

A statement is defamatory "'if it tends to so harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Jarrett v. Goldman*, 67 Va. Cir. 361, 2005 WL 1323115, at *5 (Va. Cir. Ct. 2005) (unreported decision) (quoting Restatement (Second) of Torts § 559). There are two types of defamatory statements: those that are defamatory *per se* and those that are defamatory *per quod*, i.e., defamatory only if special damage can be shown to have resulted from their publication. *Id.*; *The Gazette, Inc.*, 325 S.E.2d at 720.

The Virginia Supreme Court has identified four classes of statements that are defamatory *per se*: (1) false words about a person which impute to the person the

---

[3] There is some uncertainty as to whether the District Court for the Western District of Virginia would apply Virginia law to adjudicate the merits of Plaintiff's libel claim because "[t]he Virginia courts have yet to address the *lex loci* rule in the context of multistate defamation by means of mass communication." *Galustian*, 561 F. Supp 2d at 565. In other words, Virginia courts have not decided whether the "place of publication" of a blog is the place where the blog was authored or somewhere else. To decide this question, the District Court for the Western District of Virginia "would have to predict what the highest court of Virginia would do." *Id.* at 566. For purposes of this discussion, the Court assumes, without deciding, that Virginia law would be applied to adjudicate the merits of Plaintiff's libel claim.

commission of some criminal offense involving moral turpitude, for which the person, if the charge is true, may be indicted and punished; (2) false words about a person which impute that the person is infected with some contagious disease, where if the charge is true, it would exclude the person from society; (3) false words about a person which impute to the person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment; and (4) false words about a person which prejudice such person in his or her profession or trade. *M. Rosenberg & Sons*, 29 S.E.2d at 378.

In this case, Defendant's May 17, 2010 blog entry is arguably defamatory *per se* because it imputes to Plaintiff the commission of several potentially criminal acts. The blog entry states the following about Plaintiff: (1) she "was stalking [Defendant's husband]"; (2) she "tried to break into [Defendant's] home several times"; (3) she "attempted to run [Defendant and Defendant's husband] off the road and cause a car accident"; (4) she "hacked into [Defendant's] emails, Facebook accounts, and myspace accounts"; and (5) she "created fictitious accounts under [Defendant's] husband's name." *Complaint* [#1] at 14-15. Further, the entry suggests that Plaintiff is "dangerous" and that she may harm Defendant: "If anything happens to me and the baby dies, it was a baby that is both wanted and that we are excited about. This means that under the code of Virginia, [Plaintiff] would be prosecuted for the murder of my unborn baby." *Id.* at 15. Because the blog entry is arguably defamatory *per se*, the Court finds that Plaintiff has alleged a

colorable claim of libel under Virginia law.[4] The Court therefore concludes that the possibility that Plaintiff's claim has merit weighs in favor of transfer.

The final factor in determining whether to transfer or dismiss the case is whether Plaintiff filed this action in the wrong forum in bad faith. There is no indication that Plaintiff, who is proceeding *pro se*, "either realized or should have realized that the forum in which [she] filed was improper." *Trujillo*, 465 F.3d at 1223 n.16. Accordingly, this factor weighs in favor of transfer.

Weighing the relevant factors, the Court finds that transfer of this case would be in the interests of justice. Accordingly, the Court recommends that this case be transferred to the United States District Court for the Western District of Virginia.

## IV. Conclusion

For the foregoing reasons, I respectfully **RECOMMEND** that Defendant's **Combined Motion to Dismiss or Transfer and Brief in Support of Motion to Dismiss or Transfer** [#10] be **GRANTED in part** and that this case be **TRANSFERRED** to the United States District Court for the Western District of Virginia.

Given my recommendation to transfer the case,

IT IS **ORDERED** that Plaintiff's **Second Motion to Set Aside Stipulation to Transfer Case to Virginia** [#20] is **DENIED as moot**.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall

---

[4] Even if the District Court for the Western District of Virginia decides to apply Colorado law to adjudicate the merits of Plaintiff's libel claim, the claim may still be found to have merit. Under Colorado law, a communication is defamatory *per se* "if it is specifically directed at the person claiming injury and if, on its face and without extrinsic proof, it is unmistakably recognized as injurious." *Tonnessen v. Denver Pub. Co.*, 5 P.3d 959, 963 (Colo. App. 2000). In the Court's estimation, Defendant's blog entry may be unmistakably injurious.

have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: November 12, 2010

BY THE COURT:

 s/ Kristen L. Mix  
Kristen L. Mix  
United States Magistrate Judge